EAST PROVIDENCE WATER CO. *vs.* PUBLIC UTILITIES COM-
MISSION *et al.*

SAME *vs.* SAME.

APRIL 6, 1925.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

STEARNS, J. These two proceedings present the same issue: one is an appeal from a ruling of the Public Utilities Commission; the other, a petition for a writ of mandamus directed to the Commission. The complainant, being in doubt as to the correct method of procedure, has brought both proceedings.

The East Providence Fire District was incorporated by an act of the General Assembly in 1891 and included in its territorial limits all of the town of East Providence except the Watchemoket Fire District in said town. By the act of incorporation the property voters in the district were authorized by vote to raise money by taxation to provide a water supply for domestic, manufacturing and fire purposes, to regulate the use and price of the service, and to issue bonds to the amount of $200,000 in payment therefor. Either district by vote of the taxpayers of both districts was authorized to acquire the property of the other district, and the

town likewise by vote to acquire the property of both districts.

By special act of the legislature, in May, 1895, the East Providence Water Company was incorporated for the purpose of providing a water supply for East Providence and adjacent towns. The charter authorized the company to purchase from any existing fire district in East Providence, and any such fire district to sell to said corporation, upon such terms as should be mutually agreed upon, any and all property of such district, said Water Company to own, use and possess said property in the same manner and to the same extent as if it had been originally granted to it. Section 3 of the act provides that the Water Company may regulate the use of the water distributed through its pipe lines and the price to be paid therefor: Provided, that within the limits of any fire district which may convey its property to the Water Company such price shall never exceed the price fixed in such district at the time of the passage of the act.

In October, 1895, the East Providence Fire District, sold and conveyed by its deed all of its property to the East Providence Water Company. The consideration was the payment of $2,100 to the Fire District and the assumption by the Water Company of the bonded indebtedness of the district, amounting to $200,000. The deed of sale was made, as expressed therein, by virtue of the powers conferred upon the Fire District by the act of incorporation of the Water Company, and also pursuant to a vote of the Fire District passed at its annual meeting; it contained the condition that upon failure to pay any bond or the interest thereon, the entire property with any additions or improvements should revert to and become the property of the Fire District. The existing water rates have continued unchanged to the present time. The Water Company has paid the bonds as they matured and all interest.

In November, 1924, the Water Company filed a new schedule of rates with the Public Utilities Commission and

a request that the Commission give notice and order a public hearing as to the propriety of the change and the proposed increase of rates; and that, after such hearing and investigation, the Commission make an order putting the new rates into effect. The claim of the Water Company is that the present rates are unjust, discriminatory and confiscatory. After a hearing on the question of its jurisdiction, the Commission refused to consider the merits of the proposed changes on the ground of want of jurisdiction. The Commission held that it had no power under the Public Utilities Act (G. L. 1923, C. 253) to nullify the limitation as to rates contained in Section 3' of the Charter of the East Providence Water Company; that the power to grant such relief still remains in the General Assembly and has not been delegated to the Commission, so far as the case of this particular company is concerned.

Two questions are thus raised:

1. Can the General Assembly lawfully order the change of rates, and an increase over the maximum rate fixed in the charter of the Water Company?

2. Has the General Assembly by the Public Utilities Act delegated this power to the Commission?

The Water Company is a public utility. (C. 253, s. 2.) The plenary power of the General Assembly, within constitutional limits, to control and regulate the rates, service, etc., of a public utility is now not open to question. The exercise of such power of regulation is a part of the police power of the State which may be exercised by the State through the agency of a commission. *Public Utilities Commission* v. *R. I. Co.*, 43 R. I. 135.

It is argued that as the Fire District in making the sale relied upon the maximum rate provision in the Water Company charter, it would be a fraud upon the inhabitants of the district to now authorize a higher rate. This argument is not sound. The State did not, nor could it for an unlimited time, surrender its governmental power of regulating rates. In this connection it is also to be noted that

the charter of the Water Company by general law (G. L. 1923, C. 248, s. 79) was granted, subject to the power of the General Assembly to amend or repeal the same at any time thereafter. The issue is not one exclusively between the Water Company and the Fire District. The fixing of rates by a public utility with a part of the public often affects the rest of the public. If service to some of the public is furnished at less than a proper cost it is quite probable that others dependent on the public utility may suffer either from inadequate or too expensive service. The charter provision of the Water Company is regulatory in character and subject to change. The sale of the Fire District property, as it related to the exercise of a public service, we think must be held to have been made by the Fire District in contemplation of the continuing right and duty of the State to exercise its regulatory powers whenever the interests of the public might require.

This conclusion is further supported by consideration of the nature of a fire district. Such a district is a governmental or political body which is incorporated as a convenient method of exercising a part of the sovereign power of the State. Its charter may be imposed on the inhabitants thereof without the necessity of their acceptance. It holds no property except for public purposes; and it may be abolished or its territorial limits may be changed at the will of the legislature. *Sherman* v. *Benford*, 10 R. I. 559; *Cole* v. *Fire-Engine Co. in East Greenwich*, 12 R. I. 202; *State* v. *District of Narragansett*, 16 R. I. 424; *Wood* v. *Quimby*, 20 R. I. 482.

It is claimed that the Fire District and the Water Company were given the right to make the contract by the express provisions of their charters; that the limitation of maximum rates was a part consideration of the sale by the Fire District and that to increase that rate would impair the obligation of the contract.

On the same day (October 8, 1895), after the conveyance by deed of the water works property, the East Providence

Water Works, alone, executed a writing which was entitled a supplementary agreement between the Water Company and the Fire District. Therein it is recited that in consideration of the conveyance heretofore made the Water Company agreed to erect a standpipe and to extend its water pipes upon request, upon receiving a satisfactory guarantee of income on such cost, with certain other provisions not material to this case. The contract thus embodied in the deed and "supplementary agreement" in the statements of the consideration in each document does not include any reference to rates. The Water Company had no power under the terms of its charter to make a contract in regard to rates which was not subject to legislative change. Although presumably the charter restriction was an influence in the sale, it was not a part of the contract. The advantage to the Fire District in regard to future rates was dependent not on the contract but the legislative restriction in the charter, which was subject to change by the General Assembly.

Has the General Assembly, under Chapter 253, G. L. 1923, delegated to the Commission power to authorize an increase of the rates? We think it has delegated such power. The Public Utilities Act was enacted in 1912. Very extensive powers of regulation of public utilities are given therein to the Public Utilities Commission, which was created by the act.

By Section 2 it is provided that the term "public utility" as used in the statute shall comprehend and apply to every corporation, association or individual, their lessees, trustees or receivers appointed by any court, that may own, lease, operate, manage or control any railroad or that may operate or do business as a common carrier within the State, with like provisions for telegraph, telephone, gas, electricity, water, light, heat and power organizations serving the public, either directly or indirectly. The only exception in this section is contained in the following clause: "Provided, that this act shall not be construed to apply to any public

water works and water service owned and furnished by any city or town." Any limitation of power in the Commission in the case at bar, if it exists, must be found in the act by implication.

Section 3 provides that, in addition to the powers and duties specified in the act, the Commission shall also be vested with all of the powers necessary to enable the Commission to carry out fully and effectually all the purposes of the act.

Section 56 provides that the act shall be construed liberally in order to accomplish the purpose thereof; that the Commission shall, in addition to the specified power and authority, have "all additional, implied and incidental power which may be proper and necessary" to carry out the purpose of the act.

The procedure of the Commission is prescribed with particularity. Proceedings may be begun by complaint (Sec. 18), by summary investigation by the Commission, with or without notice, or by notice of a change of schedules by a public utility, (Sec. 48). If an increase in rates is sought by a public utility the burden of proof to show that such increase is necessary is imposed on the public utility. It is further provided (Sec. 9) that all hearings and records of the Commission shall be public and that an annual report of all proceedings, etc., shall be prepared for the General Assembly each year. The examination of witnesses shall be under oath and production of documents may be required by subpoenas issued by the Commission (Sec. 15). Section 16 contains the unusual provision that no person shall be excused from testifying or producing documents upon the ground that the testimony or documents will tend to incriminate him. Immunity from prosecution and punishment in such case is granted. Section 34 gives the right of appeal to the Supreme Court to any complainant or public utility aggrieved by any order of the Commission fixing any rate or regulation on the ground that such order or regulation is unlawful or unreasonable. It is unnecessary to consider in detail other parts of the statute.

Upon examination and consideration of the entire act the conclusion is almost inevitable that the General Assembly intended to delegate to the Commission the administrative supervision and regulation of rates, and all service of public utilities furnished to the public throughout the whole State. The express exemption in the act of public water works owned by any city or town, although not conclusive, is weighty evidence that such exemption was deemed to be necessary and that otherwise the broad powers given to the Commission would include such properties. The legislature having made an express exemption of municipal water works, we find nothing in the act which warrants an extension of such exemption by implication to a fire district, which is a *quasi* municipal corporation of limited powers. The legislative power of rate making is a part of the police power of the State. If an increase of rates is permitted by the Commission it is true that as a result thereof a change is made in the maximum rate provision of the Water Company's charter. But this is a consequence of the exercise of the police power and is not an amendment of the charter, which requires special legislative action. As the right of appeal in the statute is, in the circumstances, not free from doubt we think the proper remedy is by proceedings in mandamus.

The Commission has jurisdiction in the case at bar to hear and decide the question of the propriety of the proposed increase of rates. Its refusal to act for want of jurisdiction was erroneous.

The appeal is denied. The petition for writ of mandamus is granted.

*Edward P. Jastram, Claude R. Branch, Gurney Edwards, Edwards & Angell*, for East Providence Water Company.

*Charles P. Sisson, Atty. Gen.*, for Public Utilities Commission.

*A. Truman Patterson, Town Solicitor of East Providence*, for East Providence Fire District.

*Russell W. Richmond*, of counsel.